UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD LEE SPANGLER,

                    Petitioner,

                                        CASE NO. 5:05-CV-60171
        v.                              JUDGE JOHN CORBETT O'MEARA
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

BARRY D. DAVIS,

                    Respondent.[1]
_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        A.      *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.      *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        C.      *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        D.      *Post-Conviction Relief Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        E.      *Sentencing Claims (Claims I, III-VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                1.      *Blakely (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                2.      *Inaccurate Information (Claims III, IV & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                        a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                        b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                3.      *Correction of Presentence Report (Claims V & VII)* . . . . . . . . . . . . . . . . . . . . . 19
        F.      *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        G.      *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

---

[1]By Order entered this date, Barry D. Davis has been substituted in place of Kurt Jones as the proper respondent in this action. Although petitioner's original petition was filed through counsel, his supplemental petition was filed *pro se*. Because it is not clear whether petitioner is now proceeding through counsel or solely *pro se*, a copy of this Report will be served on both counsel of record and petitioner.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*[2]

1.      Petitioner Richard Lee Spangler is a state prisoner, currently confined at the Newberry Correctional Facility in Newberry, Michigan.

2.      On September 21, 1982, petitioner pleaded guilty to two counts of criminal sexual conduct in the Oakland County Circuit Court, arising from a June 16, 1981, rape of a woman at the beauty shop where she worked. In exchange for petitioner's plea, the prosecutor agreed to dismiss three other charges, as well as two additional pending cases. Petitioner was sentenced to a term of 35-100 years' imprisonment.

3.      Petitioner moved to withdraw his plea, alleging that counsel had promised him that he would serve no more than an eight-year sentence. The trial court granted petitioner's motion and allowed petitioner to withdraw his plea. Following a jury trial, petitioner was convicted of three counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b; one count of armed robbery, MICH. COMP. LAWS § 750.529; and one count of second degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520c. On May 26, 1983, petitioner was sentenced to two concurrent terms of life imprisonment and a term of 70-200 years' imprisonment on the CSC-I convictions, 60-200 years' imprisonment on the armed robbery conviction, and 10-15 years'

[2]Respondent has not filed the state court pleadings and court decisions in accordance with Rule 5, 28 U.S.C. foll. § 2254. The procedural background set forth here is drawn from petitioner's brief and respondent's answer, which are in accord regarding the procedural history of this case. The state court pleadings and orders relating to petitioner's state court motion for relief from judgment, which are the state court materials relevant to petitioner's claim, are attached to petitioner's supplemental petition.

imprisonment on the CSC-II conviction.

4.      Petitioner appealed to the Michigan Court of Appeals, which affirmed petitioner's convictions and sentences.  *See People v. Spangler*, No. 72860 (Mich. Ct. App. Oct. 5, 1984). However, the Michigan Supreme Court remanded the case for resentencing, concluding that the court's imposition of a higher sentence after trial than had been imposed following the plea raised a presumption of vindictiveness, and that the trial court had failed to explain the reasons for the increased sentence to overcome the presumption of vindictiveness. *See People v. Mazzie*, 429 Mich. 29, 413 N.W.2d 1 (1987).

5.      On December 17, 1987, the trial judge reimposed the original sentence, explaining his reasons for doing so.  The court of appeals granted petitioner's delayed application for leave to appeal.  On the merits, the court of appeals rejected three of petitioner's claims, but remanded for resentencing because the trial court failed to prepare a sentencing information report and failed to utilize the sentencing guidelines.  *See People v. Spangler*, No. 120716 (Mich. Ct. App. Aug. 11, 1992).  The prosecution's application for leave to appeal was denied by the Michigan Supreme Court.  *See Poeple v. Spangler*, 442 Mich. 861, 500 N.W.2d 469 (1993).

6.      A resentencing hearing was held on February 4, 1994.  The parties agreed that the guidelines range for the minimum term of imprisonment was 180-300 months.  At the hearing, both the victim and petitioner testified, and the court reviewed three psychological evaluations.  The court sentenced petitioner to three terms of life imprisonment on the CSC-I conviction, a term of 20-40 years' imprisonment on the armed robbery conviction, and a term of 10-15 years' imprisonment on the CSC-II conviction.  Petitioner did not appeal his resentencing.

7.      On June 24, 2005, petitioner, through counsel, filed both a motion for relief from

judgment in the trial court and a petition for the writ of habeas corpus in this Court. In this Court, petitioner requested that his application be held in abeyance pending completion of the state court proceedings. The Court granted the motion on December 19, 2005.

8.      Meanwhile, in his state court motion (and subsequently filed amended motion) petitioner argued that he was entitled to resentencing because: (1) petitioner's sentence was increased based on facts found by the trial court rather than by the jury beyond a reasonable doubt; (2) the trial court based his sentence on erroneous and inaccurate information; (3) his presentence report was inaccurate with respect to facts bearing on placement, classification, and parole eligibility; and (4) he received ineffective assistance of trial and appellate counsel in connection with his sentencing. The trial court denied petitioner's motion on September 20, 1995, and the Michigan Court of Appeals denied petitioner's application for leave to appeal. Petitioner did not seek leave to appeal in the Michigan Supreme Court.

9.      On November 16, 2005, petitioner filed a supplemental motion for relief from judgment. The trial court denied the motion as a prohibited second motion pursuant to MICH. CT. R. 6.502(G). The Michigan Court of Appeals denied petitioner's application for a writ of superintending control on January 19, 2007. The court of appeals denied petitioner's application for leave to appeal on August 21, 2007. Petitioner's application for leave to appeal this decision was returned by the Supreme Court as untimely.

10.     On December 3, 2007, petitioner, now proceeding *pro se*, filed a motion to supplement the petition, and on December 19, 2007, he filed a brief in support of his supplemental petition. On January 7, 2008, the Court entered an Order lifting the stay, granting the motion to supplement the petition, and directing respondent to file an answer. As set forth in his brief,

petitioner raises the following claims in support of his petition:[3]

     I.      APPELLANT IS ENTITLED TO RESENTENCING BECAUSE THE SENTENCING JUDGE INCREASED THE SENTENCE RANGE IN THIS CASE BASED ON FACTS THAT WERE NOT PROVEN TO A JURY BEYOND A REASONABLE DOUBT, IN VIOLATION OF BLAKELY V. WASHINGTON, AND TO A DEGREE (EFFECTIVELY, LIFE WITHOUT PAROLE), THAT IS UNLAWFUL FOR THE STATUTE UNDER WHICH THE DEFENDANT WAS CONVICTED.

     II.     THE COURT SHOULD AMEND ITS SEPTEMBER 19, 2005 ORDER TO PERMIT RESUBMISSION WITHOUT A SHOWING OF "CAUSE" PER MCR 6.508(D)(3) OR TREATMENT AS A SECOND OR SUCCESSIVE MOTION FOR RELIEF PER MCR 6.502(G) SHOULD THE SUPREME COURT DEPART FROM ITS FOOTNOTE HOLDING IN PEOPLE V. CLAYPOOL, 470 MICH. 715 (2005).

     III.    THE FAILURE OF THE SENTENCING COURT TO COMPEL CORRECTION OF THE 1983 PRESENTENCE INVESTIGATION REPORT HAS RESULTED IN A MISCHARACTERIZATION OF DEFENDANT SPANGLER'S CRIMINAL HISTORY AND A GROSS DISTORTION OF HIS ALLEGED PROPENSITY TO COMMIT SEXUAL OFFENSES, WHICH HAS RESULTED IN LIFE SENTENCES BASED ON INACCURATE, DISTORTED AND UNTRUE ASSUMPTIONS.

     IV.    A RESENTENCING IS REQUIRED WHERE THE COURT'S APPOINTED EXPERT WITNESS IN THE AREA OF "SEXUAL DEVIATIONS AND SEXUAL BEHAVIOR" HAS RENOUNCED HIS PRIOR OPINION OF DEFENDANT SPANGLER AS INACCURATE AND INCORRECT BECAUSE THE SOURCE DOCUMENTS RELIED UPON WERE FACTUALLY MISLEADING AND/OR INACCURATE.

     V.    AN ORDER SHOULD ISSUE DIRECTING THE PROBATION DEPARTMENT TO PRODUCE AN ENTIRELY NEW SENTENCING REPORT THAT EXCLUDES ALL ARRESTS WITHOUT CONVICTIONS AS REQUIRED BY JUDGE THORBURN'S DECISION TO DISREGARD THOSE CONVICTIONS IN 1987 AND THE COURT'S 1994 STATEMENT THAT IT WOULD NOT CONSIDER ANY ARREST THAT LACKED A CONVICTION, AND, ADDITIONALLY, ISSUE AN ORDER

---

[3]In petitioner's brief, the following issues are not numbered sequentially. For clarity, I have numbered them sequentially here. Further, in his request to supplement the petition, petitioner asserted his original *Blakely* claim, as well as the three claims designated here as claims VI-VIII. Giving petitioner's *pro se* brief a generous construction, I consider all of the claims set forth in his brief.

DIRECTING THE DEPARTMENT OF CORRECTIONS TO DESTROY ALL PREVIOUS VERSIONS OF THE SENTENCING REPORT.

VI.    TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS BY SENTENCING DEFENDANT BASED ON INFORMATION FOUND IN TWO PSYCHOLOGISTS' PRE-SENTENCE REPORTS THAT WERE HEAVILY INFLUENCED BY INFORMATION ORDERED STRUCK BY THE TRIAL COURT AS INACCURATE; FURTHERMORE, DEFENDANT'S ATTORNEY'S FAILURE TO CITE THIS AT THE TIME OF SENTENCING.

VII.    THE DUE PROCESS CLAUSE OF THE U.S. CONST., AMEND. XIV, REQUIRES THAT DEFENDANT'S PRE-SENTENCE REPORTS, PSYCHOLOGICAL REPORTS, AND JUDGMENT OF SENTENCE BE CORRECTED SO THAT HE CAN RECEIVE PROPER PLACEMENT, CLASSIFICATION, AND PAROLE ELIGIBILITY WITHIN THE MICHIGAN DEPARTMENT OF CORRECTIONS (MDOC).

VIII.    THAT DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILURES BY HIS ATTORNEYS MICHAEL S. FRIEDMAN AND APPELLATE COUNSEL FRED BELL PROPERLY TO REVIEW THE PSYCHOLOGISTS' REPORTS PRIOR AND SUBSEQUENT TO THE COURT HEARING FOR POSSIBLE SIGNIFICANT ERRORS AND TO TIMELY OBJECT THERETO.

11.    Respondent filed his answer on May 19, 2008. He contends that petitioner's claims are barred by petitioner's procedural default in the state courts and without merit.

B.    *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts. Even were the Court to conclude that petitioner's claims are procedurally default, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his counsel was ineffective for failing to raise these claims. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v.*

*Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Post-Conviction Relief Claim (Claim II)*

In his second claim, petitioner argues that the state court erred in denying his second motion for relief from judgment as a successive motion, and that the trial court should have amended its order of dismissal to permit him to reassert his claims in light of future developments in Michigan sentencing law. This claim is not cognizable on habeas review. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Sentencing Claims (Claims I, III-VII)*

The bulk of petitioner's claims challenge his 1994 resentencing. In his first claim, petitioner contends that his sentence was impermissibly based on facts not found by the jury. In his third, fourth, and sixth claims, petitioner contends that his sentence was based on inaccurate information. Finally, in his fifth and seventh claims, petitioner contends that his presentence report was inaccurate and that he is entitled to have the report amended. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.  _Blakely_ *(Claim I)*

In his first claim, petitioner contends that his sentence violates the Supreme Court's *Apprendi* line of cases. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence."

*Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme

Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006

WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; *cf. Williams v. Benik*, No. 04-C-966, 2005 WL 300379, at *2 (Jan. 26, 2005), *vacated in part on other grounds*, 2005 WL 331743 (W.D. Wis. Feb. 8, 2005) (upholding state's indeterminate sentencing scheme under *Blakely*); *State v. Rivera*, 102 P.3d 1044, 1054-55 (Hawai'i 2004) (same); *Commonwealth v. Junta*, 815 N.E.2d 254, 262 n.11 (Mass. Ct. App. 2004) (same); *Commonwealth v. Smith*, 863 A.2d 1172, 1178 (Pa. Super. Ct. 2004) (same).

Further, regardless of the merits of defendant's claim, it is barred by the non-retroactivity principle established by the Court in *Teague v. Lane*, 489 U.S. 288 (1989). As the Court has recently explained:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495 (1990); *Teague v. Lane,* 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).
>
> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495 (quoting *Teague,* 489 U.S., at 311). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of

an accurate conviction is *seriously* diminished." *Id.,* at 313 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any . . . 'ha[s] yet to emerge.'" *Tyler v. Cain,* 533 U.S. 656, 667, n. 7 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243 (1990)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (footnote and parallel citations omitted).

Here, defendant's sentence became final in 1994, well before the Supreme Court's decisions in *Apprendi*, *Blakely*, and *Booker*. None of these cases is retroactively applicable to cases on collateral review. As the Sixth Circuit has explained, "[i]t is soundly established that *Blakely* and *Booker* do not apply retroactively to cases on collateral review." *Hicks v. United States*, 258 Fed. Appx. 850, 854 (6th Cir. 2007) (citing *Valentine v. United States*, 488 F.3d 305, 331 (6th Cir. 2007); *United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his *Blakely* claim.

2.      *Inaccurate Information (Claims III, IV & VI)*

Petitioner next contends that he was sentenced on the basis of inaccurate information. Specifically, he contends that his presentence report included information regarding a number of arrests which did not result in convictions, and that the psychological reports upon which the trial court relied in imposing his sentence were inaccurate. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

a.  *Clearly Established Law*

Petitioner's claim invokes the rule established in *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972). In both of those cases, "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D.

Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

### b. Analysis

Petitioner first contends that his sentence was based on inaccurate information because his presentence report reflected crimes for which he was arrested, but not convicted. However, at both the original sentencing in 1987 and petitioner's resentencing in 1994, the trial judge indicated that these arrests would be disregarded. *See* Sentence Tr., dated 12/17/87, at 3; Sentence Tr., dated 2/4/94, at 8. Because the trial judge explicitly disregarded these arrests, petitioner cannot show that his sentence was based on any inaccurate information. And, as noted above, "[w]hen a sentencing judge considers unreliable information in sentencing, [relief] is required only if the challenged information is demonstrably made the basis for the sentence." *United States v. Huckins*, 53 F.3d 276, 280 (9th Cir. 1994) (internal quotation omitted); *see also*, *United States v. Garcia*, 693 F.2d

412, 415 (5th Cir. 1982); *Friday v. Straub*, 175 F. Supp. 2d 933, 940-41 (E.D. Mich. 2001) (Gadola, J.); *Warren v. Miller*, 78 F. Supp. 2d 120, 130 (E.D.N.Y. 2000). Further, there was no inaccurate information. The presentence report did not list any convictions arising from these arrests, and petitioner does not claim that the fact of these arrests was itself inaccurate. Even if the trial court had based its sentence in part on these arrests–which it explicitly did not do–there would have been no constitutional error. As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994). Thus, the fact that the charges may have been dismissed "is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases." *Stewart*, 878 F. Supp. at 1144.

Petitioner also argues that he was sentenced on the basis of inaccurate information because the psychological reports upon which the trial court based its decision were themselves based on the information in his presentence report listing arrests which did not result in conviction. Prior to resentencing two experts–one chosen by the court and one chosen by petitioner–evaluated petitioner, and the trial court relied on these reports in concluding that petitioner should be incarcerated for a significant term. *See* Sentence Tr., dated 2/4/94, at 24-31; *see also*, Supp. Pet., Ex. 12 (report of Michael F. Abramsky); Ex. 13 (report of Leo Niffeler). Petitioner claims that Abramsky, in a subsequent affidavit, suggested that had he known that the arrests listed in the presentence report did not result in a conviction, his opinion would have differed. Petitioner has submitted only the first page of Abramsky's affidavit. *See* Supp. Pet., Ex. 15. Even assuming that petitioner's

characterization of the affidavit is correct, he cannot show that he is entitled to habeas relief. Even in light of the prior arrest information, Abramsky concluded in his assessment that "the prognosis that I see is that Mr. Spangler will not be a problem on the outside. I do not feel that Mr. Spangler will repeat his crime again." Supp. Pet., Ex. 12, at 5. Abramsky also opined that "[t]o continue keeping this man in prison will not increase his rehabilitative potential. . . . Releasing Mr. Spangler, does not cause a risk to the community an[d] he should be resentenced." *Id*. at 6. Thus, even with the arrests reflected in the presentence report, Abramsky was of the opinion that petitioner should be released. It is difficult to see how much more beneficial to petitioner Abramsky's opinion could have been. The trial court simply rejected Abramsky's opinion and concluded that Niffeler's opinion more accurately reflected petitioner's rehabilitative potential. And Niffeler's opinion was based on a whole range of factors, including petitioner's prior criminal behavior (which included a host of crimes which both did and did not result in convictions) and petitioner's mental condition at the time of the interview. *See* Supp. Pet., Ex. 13. Indeed, Niffeler's conclusion was based primarily on petitioner's then-existing mental condition:

> It is this evaluator's impression that Mr. Spangler continues to present a very real and significant threat to the community at large. Mr. Spangler was deceptive during the course of the interview and continues to maintain a belief system in which he can justify his sexually assaultive behaviors. It is further evidence that Mr. Spangler continues to fantasize about sexually assaultive behavior. Mr. Spangler appears to show no remorse or sense of guilt for his conduct.

*Id*. at 12.

In any event, petitioner cannot show a constitutional violation under *Tucker* and *Townsend* because "the 'false assumptions' in each of those cases related to a material *fact*, not a *prediction* about some future event." *United States v. Dean*, 752 F.2d 535, 545 (11th Cir. 1985); *cf. Stewart v. Erwin*, 503 F.3d 488, 499 n.2 (6th Cir. 2007). Here, the opinions of Niffeler and Abramsky were

18

predictions of petitioner's future rehabilitative potential and risk of recidivism; they were not "facts" which can be shown to have been materially false at the time they were made. Thus, the opinions do not come within the rule of *Tucker* and *Townsend*.

In short, petitioner cannot show that the trial court actually relied on any materially false assumptions of fact in imposing sentence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3. *Correction of Presentence Report (Claims V & VII)*

Petitioner also contends that he is entitled to have the allegedly inaccurate information in his presentence report corrected, because the information affects his placement in Michigan Department of Corrections facilities, and because it may be used to deny him parole. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

There is no federal constitutional right to a pre-sentence investigation and report. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). Therefore, the mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process so as to entitle a petitioner to habeas relief. *See id.* Even where there is an alleged factual inaccuracy in a pre-sentence report, a court need not resolve the dispute when the information is not relied on in arriving at the sentence that was imposed. *See Warren v. Miller,* 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000). As noted above, petitioner cannot show that any materially false facts were relied upon by the trial court in imposing sentence.

The fact that this information may impact petitioner's placement within the corrections system does not compel a different conclusion. A prisoner has no inherent constitutional right to be incarcerated in a particular institution, or to enjoy a particular security classification. *See*

*Meachum v. Fano*, 427 U.S. 215, 222 (1976); *Montanye v. Haynes*, 427 U.S. 236, 242 (1974). Thus, the fact that alleged inaccuracies in the presentence report may impact the decision of prison officials with respect to their placement decisions does not raise a cognizable habeas claim. *See Mauldin v. Stansberry*, No. 5:06-HC-2023, 2007 WL 2904147, at *2 (E.D.N.C. Feb. 1, 2007); *Locklear v. Holland*, No. 98-6407, 1999 WL 1000835, at *2 (6th Cir. Oct. 28, 1999); *cf. Williams v. Federal Bureau of Prisons*, 85 Fed. Appx. 299, 304 (3d Cir. 2004).

Petitioner's claim that this inaccurate information may be used to deny him parole is not ripe. "If a defendant claims to be detrimentally affected by the use of an inaccurate PSR in decisionmaking as to parole . . . he should challenge such use in the parole proceedings." *Hili v. Sciarotta*, 140 F.3d 210, 216 (2d Cir. 1998). Any further relief must be sought in a separate habeas action challenging the denial of parole, after state court remedies with respect to the parole denial have been exhausted. *See id*; *United States v. Martin*, No. 89-3548, 1990 WL 136115, at *1 (6th Cir. Sept. 20, 1990). The mere possibility that this information may affect parole eligibility in the future, therefore, does not provide a cognizable basis for habeas relief at this time. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his presentence report claims.

F.    *Ineffective Assistance of Counsel*

Finally, petitioner contends that counsel was ineffective in failing to object to the allegedly inaccurate information in the psychological reports. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2. *Analysis*

Here, petitioner cannot show a reasonable probability that the result of his sentencing proceeding would have been different had counsel objected to the psychological experts' reliance on arrests for which there had been no convictions. As explained above, Abramsky's opinion was

already favorable to petitioner, but was rejected by the trial court. And Niffeler's opinion was based primarily on petitioner's then-existing mental condition, notably his deceptiveness, sexually assaultive fantasies, and justification of his behavior. Petitioner has offered nothing to show that Niffeler's or the trial court's opinion about petitioner's potential for rehabilitation or recidivism would have been altered had Niffeler not considered the arrests which did not result in conviction. Thus, petitioner cannot show a reasonable probability that his sentence would have been different, and he thus is not entitled to habeas relief on this claim.

G.  *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/15/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 15, 2008.

s/Eddrey Butts
Case Manager